```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                     FORT SMITH DIVISION


BUTLER & COOK, INC.                                    PLAINTIFF

     v.                 Case No. 2:12-2107

CENTERPOINT ENERGY GAS
TRANSMISSION COMPANY and
BILLY CARTER                                           DEFENDANTS
```

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Butler & Cook, Inc.'s ("B&C") Motion to Remand (Doc. 7) and Brief in Support (Doc. 8), Defendant CenterPoint Energy Gas Transmission Company's ("CenterPoint") Response (Doc. 13), and Plaintiff's Reply (Doc. 14) and Brief in Support (Doc. 15). For reasons set forth below, Plaintiff's Motion to Remand (Doc. 7) is **DENIED**.

**I.   Background**

B&C filed an Amended Complaint in Sebastian County Circuit Court on May 17, 2012, against CenterPoint and Billy Carter ("Carter") alleging breach of contract, promissory estoppel, unjust enrichment, fraud and constructive fraud, and violation of Arkansas' Deceptive Trade Practices Act. (Doc. 2). Defendant CenterPoint removed the matter to this Court, alleging that co-defendant Carter was fraudulently joined for the purpose of defeating diversity. (Doc. 1). B&C is an Arkansas corporation, Carter is an Arkansas resident and employee of

CenterPoint and CenterPoint is a Delaware corporation with its principal place of business in Houston, Texas, doing business in Arkansas. (Doc. 2).

On May 21, 2012, B&C filed a Motion to Remand the case to State Court, contending Carter was properly joined as a necessary party to avoid piecemeal litigation. (Doc. 7).  B&C contends this Court lacks diversity jurisdiction because B&C and Carter are both Arkansas citizens.  CenterPoint responded, arguing B&C has not shown more than a mere theoretical possibility of recovery against Carter and thus the joinder was improper. (Doc. 13).

For purposes of this Motion, the following facts, taken from the Complaint, are assumed true and viewed in the light most favorable to B&C.  B&C operates a machine shop serving local manufacturers and oil-and-gas firms in performing repairs and maintenance on industrial machinery and hydraulic equipment, tooling steel, and fabricating parts for industrial machinery. For two-and-a-half years CenterPoint hired B&C to repair and maintain hydraulic equipment used in its Fort Smith, Arkansas, operations.  Such repairs were performed pursuant to a Master Service Agreement ("MSA"), executed in September, 2009. (Doc. 1, Ex. 4). The Amended Complaint does not concern work done pursuant to the MSA or repairs and maintenance performed on CenterPoint's personal property but only the use of B&C's

workforce assets in connection with real property fixtures owned by CenterPoint.  Nonetheless, portions of the MSA are applicable to this matter.  Section II C provides:

> The execution of this Agreement by Company and Contractor does not obligate Company to offer any work to Contractor nor does it obligate Contractor to accept any work offered or requested by Company. Rather, the parties shall only be bound to the terms of this Agreement upon the issuance and acceptance of a Work Order properly executed by representatives of both parties.  Each properly executed Work Order shall be deemed a separate contract between the parties.

(Doc. 1, Ex. 4, P. 2).

> Section IV D provides:
>
> Company shall designate in writing to Contractor, prior to the commencement of the Work, a representative who shall be fully acquainted with the Work and who has authority on behalf of Company to approve changes in the scope of the Work, approve any daily reports submitted by Contractor, render decisions promptly, and furnish information expeditiously.

(Doc. 1, Ex. 4, P. 8).

Arkansas requires parties to hold a license when they undertake to construct or repair improvements to real property such as a pipeline. (Doc. 2, P. 6).  No such license is required to do mechanical and fabricating work on personal property.  The Amended Complaint states that as CenterPoint's manager[1], Carter promised B&C that if it would spend the money required to qualify for a license, CenterPoint would add B&C as an approved

---

[1] CenterPoint argues that Carter was not a manager; his title was "Lead Technician Line Stop and Hot Tap."  (Doc. 13, P. 6).

vendor for working on its pipelines. (Doc. 2, P. 5). In September, 2010, B&C released two of its employees to work for CenterPoint through a temporary agency, and began the process of obtaining a contractor's license. CenterPoint paid the temporary service approximately $30.00 per hour per worker, which is less than the $65.00 hourly rate B&C and other outside machine shops would charge for the same work without going through a temporary agency. By January 2011, B&C had fulfilled every requirement specified by Carter, but neither he nor CenterPoint assigned work directly to B&C, even though they were aware B&C had obtained the license Carter demanded. (Doc. 2, P. 6). Instead, CenterPoint continued to assign work through the temporary agency, at the reduced rate. Carter allegedly also insisted that in order for B&C's trained welders to work directly for CenterPoint, they must be certified. After B&C was licensed and its employees had been certified, CenterPoint continued to utilize B&C employees by going through the temporary agency. The Amended Complaint alleges Carter and CenterPoint never intended for B&C to benefit from CenterPoint's exploitation of B&C's assets, and Carter and CenterPoint knew by December 2010, or shortly thereafter, that B&C would not be paid shop rates for those services. According to B&C, Carter never communicated CenterPoint's decision not to pay B&C directly for the use of its workers. (Doc. 2, P. 7).

The Amended Complaint alleges B&C's Chief Operating Officer, Danny Wilson, made repeated efforts to contact Carter in order to collect money allegedly owed to B&C for the use of its workers. (Doc. 2, P. 7). B&C asserts Carter issued false assurances that work orders and payment would be forthcoming, and continued using B&C workers through the temporary agency. In August 2011, Carter referred Wilson to Garry Bassett, Director of Design Engineering at CenterPoint. Wilson advised Bassett of his dealings with Carter. B&C alleges Bassett told it he was aware of the dealings between B&C and Carter and would see to it that B&C was paid. The Amended Complaint argues this statement was fraudulent, and Bassett and CenterPoint were determined to "string the Plaintiff along" and accept valuable benefits they knew B&C expected payment for, but for which they never intended to authorize payment to B&C. B&C claims it is the victim of a "scheme" instrumented by Carter and CenterPoint.

The Amended Complaint alleges Carter managed CenterPoint's facility in Fort Smith and had the actual and/or apparent authority to direct operations conducted by the Fort Smith office on a day-to-day basis and the apparent authority to bind CenterPoint to pay the reasonable value of any services beneficially provided to CenterPoint. (Doc. 2, P. 3). The Amended Complaint further states that if Carter knew that he did not have actual authority to bind CenterPoint to contracts, then

the fact that he promised compensation and future benefits to induce B&C to part with valuable workforce assets would be actually fraudulent. In that case, according to B&C, Carter's liability for that conduct would be personal. The Amended Complaint asserts Carter was an actual employee and agent of CenterPoint, and acted in the course and scope of his employment. B&C contends because Carter induced B&C to part with consideration that afforded an actual benefit to CenterPoint, any statements by Carter are attributable to CenterPoint, even if fraudulent. As a result, B&C alleges, CenterPoint is liable for the damages caused by those statements based on the doctrine of *respondeat superior*, and also chargeable with notice of any facts known by Carter during the course and scope of his employment. (Doc. 2, P. 7).

B&C seeks damages in the amount of $67,275.00 and $100,000.00 in punitive damages from both Carter and CenterPoint. (Doc. 2, P. 15).

**II.  Standard of Review**

The Eighth Circuit has defined fraudulent joinder as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). Fraudulent joinder exists when a party has been joined to deprive the federal court of jurisdiction. *Anderson v. Home*

*Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983).  The burden of proving fraudulent joinder rests on the removing defendant, and all doubts should be resolved in favor of remand.  *In re Business Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

In assessing a fraudulent joinder claim, the Court "must simply determine whether there is a reasonable basis for predicting that the state's law might impose liability against the defendant."  *Filla* at 811.  This means the Court must determine whether Arkansas law might impose liability against Carter for either breach of contract, promissory estoppel, unjust enrichment, fraud or violation of the Arkansas Deceptive Trade Practices Act.

**III. Discussion**

B&C argues that if the Court were to find that CenterPoint is not bound by the contract, it should find that Carter is bound.  In *Lasater v. Crutchfield,* 92 Ark. 535 (Ark. 1909), the Arkansas Supreme Court held that an employee who acted beyond the scope of his employment became personally liable on the contract.  However, B&C has not alleged facts which show the representations of Carter rose to the level of a contractual promise, or anything other than a mere indication of future willingness to contract contingent upon B&C's employees obtaining proper certification.   In fact, nowhere in its

complaint does B&C mention Carter's potential liability for breach of contract. On the contrary, B&C alleges that it was Garry Basset, a CenterPoint executive in Louisiana, who "confirmed his knowledge of the arrangement and promised recompense." (Doc. 2, P. 11). Further, the Complaint alleges that B&C "entered a contract with *CenterPoint* obliging Butler & Cook to obtain a contractor's license...." (Doc. 2, P. 13)(emphasis added). According to the Complaint, Carter simply "approached Butler & Cook with a proposal to have Butler & Cook send some of its employees out to operate "hot tap" equipment on pipelines...." (Doc. 2, P. 9). Based on B&C's own allegations there is no basis for arguing that Carter is personally liable on a contract he may or may not have entered into on CenterPoint's behalf.

To state a claim for fraud, a plaintiff must plead the existence of five elements: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance upon the representation; and (5) damage suffered as a result of the reliance. *DePriest v. AstraZeneca Pharmaceuticals, L.P.* 2009 Ark. 547 (2009); *McAdams v. Ellington,* 333 Ark. 362 (1998). B&C alleges in its Complaint that it was motivated to incur the

losses it did "because Carter had promised benefits in the future." (Doc. 2, P. 10). The Arkansas Supreme Court has often affirmed that projections of future events or a promise of future conduct may not form the basis of a fraud claim. *Golden Tee, Inc. v. Venture Golf Schools, Inc.*, 333 Ark. 253 (1998); *South County, Inc. v. First Western Loan Co.*, 315 Ark. 722 (1994). There is no reasonable basis for predicting that B&C can establish a claim against Carter personally for fraud.

The law on promissory estoppel is set out in the Restatement (Second) of Contracts:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*See K.C. Props. v. Lowell,* 373 Ark. 14 (2008); *Rigsby v. Rigsby,* 356 Ark. 311 (2004).

Liability for fraud and promissory estoppel both depend on the reasonableness of the plaintiff's reliance on defendant's statements. Given the language in the MSA that only representatives who are designated in writing have the authority to bind CenterPoint, that CenterPoint is not obligated to offer any work to B&C and that the parties are only bound upon the issuance and acceptance of a properly executed work order, it

was patently unreasonable for either Carter or B&C to believe that B&C could rely on statements made by Carter. Accordingly, there is no reasonable basis for predicting that B&C can establish a claim against Carter personally for Promissory Estoppel.

To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. *See El Paso Prod. Co. v. Blanchard,* 371 Ark. 634 (2007). In its Amended Complaint, Plaintiff alleges that Carter and CenterPoint are jointly and severally liable for $67,275.00, or alternatively $66,500.00 payable by CenterPoint only. (Doc. 2, P. 14). This figure supposedly represents the amount that CenterPoint would have had to pay B&C for work performed had it hired B&C directly as opposed to going through a temporary service and paying a reduced hourly rate, plus the fees and costs associated with obtaining licensure and certification and hiring additional workers. This theory of recovery fails for two reasons.

First, Carter did not receive any benefit from B&C as a result of his statements or promises. In its damage claim, B&C states that *CenterPoint* was unjustly enriched in the amount of no less than $52,500. (Doc. 2, P. 12)(Emphasis added). Nowhere in the Amended Complaint does B&C allege that Carter received

anything of value which he should be required to restore to avoid injustice.

Second, the facts alleged in the Complaint do not indicate that CenterPoint was unjustly enriched by Carter's actions. The fact that B&C believed that CenterPoint should hire its employees directly at the higher hourly rate matters little when what actually happened was that CenterPoint continued to use the same employees through the temporary agency at a reduced rate. In general, the focus of unjust enrichment is based on what the enriched person received rather than what the opposing party lost. *Grisanti v. Zanone*, 2012 Ark. App. 545 (Ark. App. 2009); *Feagin v. Jackson*, 2012 WL 1522297 at *8 (Ark. App. 2012). Although B&C alleges that CenterPoint was unjustly enriched in the amount for which it claims its services are worth, the actual value of the services performed is what the temporary agency charged for the work and CenterPoint paid for it. There is no reasonable basis for predicting that B&C can establish liability against Carter personally under the theory of unjust enrichment.

CenterPoint argues that as a consumer protection statute, the Arkansas Deceptive Trade Practices Act does not apply to B&C. (Doc. 1, P. 8). However, this Court has previously held that the Arkansas Deceptive Trade Practices Act does not conclude that business entities or non-consumers cannot utilize

its provisions as a basis for recovery. *Valor Healthcare, Inc. v. Pinkerton*, *et. al*, 2008 U.S. Dist. LEXIS 105988 (Western District Arkansas, December 23, 2008); *see* Ark. Code Ann. § 4-88-101. Plaintiff does not allege, or set forth any facts with any specificity, that Carter knowingly made any false representation as to the "characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style or model." *See* Ark. Code Ann. § 4-88-107(a)(1). All of the alleged statements attributed to Carter are with respect to inducing B&C to pursue certification and licensure with the promise to hire their employees directly instead of indirectly through a temporary agency. In order to state a claim for an unfair business practice, B&C is required to allege facts showing that Carter engaged in an unconscionable, false, or deceptive act or practice in business, commerce or trade. Ark.Code Ann. § 4-88-107(a)(10). The word "unconscionable" has been defined to mean an act that affronts the sense of justice, decency, and reasonableness. *Baptist Health v. Murphy,* 365 Ark. 115 (2006). Here, B&C alleges that Carter falsely represented that if B&C would obtain certain certification and licensure, CenterPoint would hire B&C's employees directly at a higher rate than they were paying to the temporary agency. In its prayer

for relief, B&C seeks damages for the earnings B&C would have made if the alleged contract had been performed and the benefits that B&C paid to secure the continued services of workers whom it made available for CenterPoint's use.  Although labeled as "deceptive" and "unconscionable", Carter's alleged wrongs are not of the type and character as to bring them within the scope of the Arkansas Deceptive Trade Practices Act.  When the performance of a duty under a contract is contemplated, the nonperformance of that duty is most typically known as a breach. *Taylor v. George*, 92 Ark. App. 264 (2005).  In its prayer for relief, B&C seeks damages to recover the amount it expended in reliance on Carter's statements and the amount it would have received had CenterPoint hired its employees directly.  The claims stated by B&C constitute, if anything, an ordinary breach of contract claim that does not rise to the level of violating the Arkansas Deceptive Trade Practices Act.  *See CEI Engineering Associates, Inc. v. Elder Construction Company*, 2009 Ark. App. 259 (Ark. App. 2009)(Trial court erred by not compelling arbitration of plaintiff's Arkansas Deceptive Trade Practices Act claim because the true character of the claim was for breach of contract.)

There is no reasonable basis for predicting that Arkansas law might impose liability against in-state defendant Carter for either breach of contract, unjust enrichment, promissory

estoppel, fraud or violation of the Arkansas Deceptive Trade Practices Act. Accordingly, the Court finds that Defendant Carter was fraudulently joined in these proceedings in order to defeat federal jurisdiction. Billy Carter is therefore dismissed from this action without prejudice.

### IV. Conclusion

For the reasons set out herein, Plaintiff's Motion to Remand (Doc. 7) is **DENIED**. Defendant Billy Carter is dismissed without prejudice and the Court's jurisdiction over this matter is proper pursuant to 28 U.S.C. §1332 (a)(1). <u>All parties are to bear their own costs and fees.</u>

**IT IS SO ORDERED** this 18th day of September, 2012.

<u>/s/ Robert T. Dawson</u>
Honorable Robert T. Dawson
United States District Judge